IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 3:06-cr-587 |
| v. | ) | |
| EDWARD KEITH DEMBRY, | ) | GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE |
| Defendant. | ) | |

The Court should deny defendant's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) because he has no medical condition that constitutes "extraordinary and compelling reasons" justifying early release, a reduction of his sentence is inconsistent with the 18 U.S.C. § 3553(a) sentencing factors, and he remains a danger to the community.

1. On October 18, 2006, defendant was charged in U.S. District Court for the Southern District of Iowa for Felon in Possession of Ammunition. (DCD 2.) The offense involved the defendant drawing a handgun from his rear waistband in full view of the police while running up a flight of stairs at an apartment building. (DCD 94, ¶ 5.) Defendant discarded the firearm but was found in possession of 11 rounds of ammunition and a magazine that fit the discarded firearm. (DCD 94, ¶¶ 5, 6, and 7.)

2. On May 21, 2007, defendant was found guilty by jury trial of the charge. (DCD 71.)

3. At sentencing, the Court considered the 18 U.S.C. § 3553(a) factors and found that the guidelines were reasonable and adequately addressed the factors and

circumstances of the case. (DCD 94, pg. 37.) The Court noted defendant "had absolutely no remorse for his actions." *Id.* Defendant had three prior convictions for Armed Robbery and Robbery, and was found to be an Armed Career Criminal at sentencing. (DCD 87.) On November 5, 2007, Defendant was sentenced to 265 months in prison. (DCD 89.)

4. Defendant is now 57 years old and incarcerated at Leavenworth USP. He has served roughly 62% of his sentence and is currently scheduled for release on August 21, 2025. *Find an Inmate.*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited June 8, 2020).

5. On May 18, 2020, defendant filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). (DCD 131.) Prior to the District Court filing, Defendant filed a request for compassionate release and home confinement with the warden on March 29, 2020. Then on April 19, 2020, Defendant added more specific concerns regarding his medical conditions, and on April 20, 2020, Defendant provided information about a release plan, however, a place of residence was not mentioned. Then on April 28, 2020, the warden denied Defendant's request after having reviewed his medical history indicating that he did not meet the criteria. Defendant appealed this decision and the BOP again denied his request.

6. On March 26, 2020, Defendant filed a motion for compassionate release with this District Court. (DCD 123.). That motion was denied on March 28, 2020, as Defendant had not exhausted remedies within the BOP. (DCD 125.)

7. In this recent filing, Defendant asserts generally that the prison is not equipped in taking care of him. He mentions that he has asthma and it can be interpreted that he believes that this condition creates extraordinary and compelling reasons that justify early release from prison. Defendant also alleges that he is more vulnerable to COVID-19. In review of the medical records produced by BOP, it shows that Defendant recently claimed a flare up with his asthma in that he was having an anxiety attack which led to an asthma attack. See. Ex. 1. Prior to this visit on April 15, 2020, Defendant's medical records last showed a reference to his asthma in December 2010. See chart below:

**Remission**

**Asthma, unspecified**

04/15/2020 12:12 EST Petersen, T PA-C
12/17/2010 11:14 EST Mace-Leibson, Ellen DO
05/14/2008 10:37 EST Nolte, James FNP

The medical record indicates that his Albuterol inhaler was discontinued and his last reported use of the inhaler was in 2016. This demonstrates Defendant's asthma is not moderate nor severe.

8. The burden is on defendant to show that he is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A). *United States v. Korn*, No. 15-CR-81S, 2020 WL 1808213, at *6 (W.D.N.Y. Apr. 9, 2020); *United States v. Dembry*, No. 3:06-cr-0587, Document 125, at 5 (S.D. Ia. Mar. 28, 2020) (Jarvey, C.J.); *cf. United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2019) (burden is on defendant to show a sentence reduction is warranted under 18 U.S.C. § 3582(c)(2)).

9. Under the statute, this court may reduce a term of imprisonment if defendant establishes that: (1) "extraordinary and compelling reasons" support a reduction; (2) the reduction is consistent with the Sentencing Commission's applicable policy statements; (3) the factors set forth in 18 U.S.C. § 3553(a) support the reduction; and (4) the defendant is not a danger to any victim or the community as provided in 18 U.S.C. § 3142(g). 18 U.S.C. § 3582(c)(1)(A); USSG §1B1.13.

10. Title 28, United States Code, Section 994(t) requires the Sentencing Commission to promulgate policy statements describing what qualifies as "extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."

11. Pursuant to section 994(t), the Sentencing Commission issued USSG §1B1.13 as its policy statement for compassionate release motions. Because any sentence reduction under 18 U.S.C. § 3582(c)(1)(A) must be consistent with the Sentencing Commission's policy statements, section 1B1.13 is binding on this Court. *See Dillon v. United States*, 560 U.S. 817, 827 (2010).

12. Application Note 1 of USSG §1B1.13 sets forth the "extraordinary and compelling reasons" that may justify compassionate release. Medical conditions can constitute "extraordinary and compelling reasons" under USSG §1B1.13, but only if the defendant is suffering from a terminal illness, or (1) the defendant is suffering from (a) a serious physical or medical condition, (b) a serious functional or cognitive impairment, or (c) deteriorating physical or mental health because of the aging process, and (2) the medical issue "substantially diminishes the ability of the

defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG §1B1.13, comment. (n.1).

13. "Extraordinary and compelling reasons" also include "a serious deterioration in . . . health because of the aging process," but only for those prisoners 65 or older who have served at least ten years or 75% of their sentence. *Id.*[1]

14. Compassionate release on the basis of a medical condition is "rare" and "extraordinary." *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019); *United States v. Willis*, 352 F. Supp. 3d 1185, 1188 (D.N.M. 2019). Many federal inmates "have medical conditions that make confinement more difficult," and this alone is not a basis for relief. *United States v. Malone*, 2019 WL 3337906, at *2 (W.D. Va. July 25, 2019). Defendant has not demonstrated he falls within the category of defendants who present an "extraordinary and compelling" medical reason for compassionate release.

15. Defendant does not have a terminal illness. He has not submitted medical evidence suggesting he is suffering from a serious physical or medical condition, serious functional or cognitive impairment, or a deterioration in physical or mental health due to aging. Although defendant does have a history of asthma, that is not enough and does not indicate that he is enduring an "extraordinary and

---

[1] Application Note 1 also contains two other "extraordinary and compelling reasons"—certain family conditions and other circumstances that the Director of the BOP has determined to be "extraordinary and compelling" (which are listed in BOP Program Statement 5050.50, which is available at https://www.bop.gov/ policy/progstat/ 5050_50_EN.pdf). Neither of these "reasons" are applicable to defendant's case.

compelling" medical condition. *See, e.g.*, *United States v. Clark*, Crim. Action No. 17-85-SDD-RLB, 2020 WL 1557397, at *2 (M.D. La. Apr. 1, 2020) (denying release to 67-year old prisoner, who was in the "high-risk" age group for COVID-19 and had a history of high blood pressure, high cholesterol, and sleep apnea); *United States v. Gamble*, No. 3:18-cr-0022, 2020 WL 1955338, at *4-*5 (D. Conn. Apr. 23, 2020) (denying release to inmate with diabetes, even though diabetics are at higher risk of difficulties with COVID-19).

16. Even assuming defendant is suffering from a serious medical condition, he still fails to satisfy the "extraordinary and compelling" standard because he has not shown that the condition "substantially diminishes" his ability to provide self-care in the corrections environment, or that he is not expected to recover from the condition. *See* 18 U.S.C. § 3582(c)(1)(A). Indeed, his alleged medical conditions have been addressed and managed during his time at Leavenworth USP up to this time, and he has never requested compassionate release before. With no recent, credible evidence of disability or illness, however, the defendant's conclusory statements fail to meet the standard for compassionate release. *See, e.g.*, *United States v. Mollica*, No. 2:14-CR-329, 2020 WL 1914956, at *3-*6 (N.D. Ala. Apr. 20, 2020) ("[T]he court cannot just take [the inmate's] word; it needs medical evidence to determine whether her conditions meets the [extraordinary and compelling] requirement."); *United States v. Mangarella*, 3:06-cr-151, 2020 WL 1291835, at *3 (W.D.N.C. Mar. 16, 2020).

17. Ordinarily, the foregoing would end the analysis. But defendant claims that his medical conditions, when coupled with the COVID-19 pandemic, rise to the level of "extraordinary and compelling reasons."

18. The COVID-19 pandemic, however, does not change the conclusion that defendant's motion should be denied. "[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, -- F.3d --, 2020 WL 1647922, at *2 (3d Cir. April 2, 2020).

19. Rather, for a defendant to obtain compassionate release based on a medical condition that, standing alone, would not rise to the level of "extraordinary and compelling reasons" he must show: (1) a medical condition (not a condition generally applicable to many prisoners, such as advanced age) that makes him particularly vulnerable in the event he contracts COVID-19, and (2) a "particularized risk" that defendant is more likely to contract COVID-19 at the facility in which he is housed than if released. *United States v. Moskop*, No. 11-CR-30077, 2020 WL 1862636, at *1-*2 (S.D. Ill. Apr. 14, 2020); *United States v. Gillis*, No. 14-cr-00712, 2020 WL 1846792, at *3 (C.D. Cal. Apr. 9, 2020); *see, e.g.*, *Korn*, 2020 WL 1808213, at *6-*7 (denying release even though defendant's "medical conditions place him at increased risk of contracting and succumbing to COVID-19," and the forty COVID-19 cases at defendant's facility, because there was no evidence BOP was unable to "guard against or treat" the virus).

20. Because defendant cannot satisfy either prerequisite, the Court should deny his motion.

21. Defendant does has not shown that he is particularly vulnerable to COVID-19 under the CDC guidelines. His general concerns about COVID-19 do not justify release. *See Korn*, 2020 WL 1808213, at *6; *Gillis*, 2020 WL 1846792, at *3; *see Carter v. Santa Fe Adult Detention Ctr.*, No. CV 20-00271, 2020 WL 1550888, at *2 (D.N.M. Apr. 1, 2020).

22. Even assuming Defendant may be more susceptible to COVID-19 because his prior diagnosis with asthma, he has not shown that BOP "cannot adequately manage the pandemic" within Leavenworth USP or that the facility is unable to treat him. *Gamble*, 2020 WL 1955338, at *4-*5. Courts should deny motions for release, even for inmates "at extremely high risk to contract COVID-19," where the defendant has failed to show that the facility's response to the virus was inadequate, or failed to show "any particularized risk" to himself. *See United States v. Ciccone*, 2020 WL 1861653, at *3 (N.D. Ohio Apr. 14, 2020); *Moskop*, 2020 WL 1862636, at *1-*2; *see also Korn*, 2020 WL 1808213, at *6 (denying release, despite pandemic, where defendant's serious heart condition was "essentially the same as when he arrived" at the prison).

23. BOP has been devoting all available resources to protecting inmates from COVID-19 and has been planning for a potential pandemic since January 2020. BOP has since taken measures to mitigate the risk of transmission, including by limiting social visits to and tours of facilities, suspending inmate movements,

screening inmates and staff, and prioritizing home confinement of inmates. *Federal Bureau of Prisons COVID-19 Action Plan*, Fed. Bureau of Prisons (Mar. 13, 2020, 3:09 PM), https://www.bop.gov/resources/news/ 20200313_covid19.jsp; Memorandum from Attorney General William Barr to Director of BOP (Mar. 26, 2020), *available at* https://www.justice.gov/file/1262731/download.

24. Since March, BOP has increased home confinement by over 112%, and on April 3, the Attorney General exercised emergency authority under the CARES Act to increase home confinement further.[2] *Update on COVID-19 and Home Confinement*, Fed. Bureau of Prisons (May 27, 2020, 7:30 AM), https://www.bop.gov/coronavirus/; Memorandum from Attorney General William Barr to Director of BOP (Apr. 3, 2020), *available at* https://www.justice.gov/file/1266661/download.

25. Thanks to BOP's efforts, only 1,999 inmates in BOP custody are currently positive with COVID-19 as of today. *See COVID-19 Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited June 8,

[2] In deciding whether to move a prisoner to home confinement, BOP considers numerous factors, including (1) the age of the prisoner; (2) the vulnerability of the prisoner to COVID-19; (3) the security level of the facility in which the prisoner is located; (4) the prisoner's score under Prisoner Assessment Tool Targeting Estimated Risk and Needs; (5) the prisoner's crime of conviction and danger to the community; and (6) the prisoner's reentry and travel plan. BOP's goal is to perform an individualized assessment of each prisoner to determine whether he or she should be transferred to home confinement. *See supra* Memorandum from Attorney General William Barr to Director of BOP (Mar. 26, 2020).

In addition, BOP's pre-existing authority to move prisoners to home confinement continues to apply. *See* 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g). And BOP is also using its furlough authority under 18 U.S.C. § 3622, although its focus is on home confinement.

2020]). And just 184 BOP staff members are currently positive for the virus. *Id.* There have been zero positive cases of COVID-19 at USP Leavenworth and five staff members have already recovered from it. *Id.* This is in sharp contrast to the hundreds of thousands of cases of COVID-19 in the United States outside of the BOP system.

26. Moreover, "the mere *possibility* of contracting a communicable disease, in the absence of any [BOP] failures, does not rise to the level of an extraordinary and compelling reason." *Korn*, 2020 WL 1808213, at *7 (denying motion even though facility had forty positive COVID-19 cases).

27. Although the COVID-19 pandemic is certainly a crisis, defendant does not offer extraordinary and compelling reasons why this circumstance justifies *his* early release. He also has not shown that he is particularly vulnerable to COVID-19, or that he is more likely to contract the virus at Leavenworth USP than if released. Defendant's motion should be denied on these grounds alone.

28. The 18 U.S.C. § 3553(a) factors also weigh against granting compassionate release.

29. In addition, defendant remains a threat to the safety of the community based on his prior criminal history. The BOP notes that he is a high risk of recidivism.

30. Defendant also has "failed to provide any evidence that there is a suitable release residence or provided any release plan to ensure that [he] is properly monitored," nor has defendant demonstrated a means of travel to a suitable residence that is currently available and safe. *United States v. Van Dyke*, No. 2:15-CR-0025, 2020 WL 1811346, at *3 (E.D. Wash. Apr. 8, 2020).

31. Finally, defendant also asks to be released on home confinement. While the CARES Act gives BOP discretion to lengthen the time inmates may serve in home confinement under 18 U.S.C. § 3624(c)(2), *see* Pub. L. No. 116-136, § 12003(b)(2) (2020), that authority remains exclusively with BOP. Courts do not decide where a federal inmate is confined, and the power to grant home confinement rests entirely with BOP. *See United States v. Johnson*, 563 F.2d 362, 364 (8th Cir. 1977); *United States v. Davenport*, No. 14-412, 2018 WL 4353688, at *1 (D. Minn. Sept. 12, 2018); 18 U.S.C. §§ 3621(b), 3624(c).

Because defendant has failed to satisfy the requirements of 18 U.S.C. § 3582(c)(1)(A), the Court should deny defendant's motion for compassionate release. If the Court disagrees, at a minimum, the Court should require defendant to undergo a 14-day quarantine period and medical clearance prior to release to minimize the possibility of any spread of COVID-19 from the inmate to the public.

Respectfully submitted,

Marc Krickbaum
United States Attorney

By: */s/ Melisa Zaehringer*
Melisa K. Zaehringer
Assistant United States Attorney
U.S. Courthouse Annex, Suite 286
131 E. 4th Street
Davenport, Iowa 52801
Tel: (563) 449-5432
Fax: (563) 449-5433
Email: melisa.zaehringer@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2020, I electronically filed the foregoing with the Clerk of Court using the CM ECF system. I hereby certify that a copy of this document was served on the parties or attorneys of record by:

____U.S. Mail ______ Fax ______Hand Delivery

__X__ECF/Electronic filing ____Other means

UNITED STATES ATTORNEY

By: */s/ Melisa Zaehringer*